IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02006-MSK-MJW

AHMED MOHAMMED AJAJ,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
RON WILEY,
TOMAS GOMEZ,
KEITH POWLEY,
UNITED STATES OF AMERICA,
MICHAEL MERRILL,
JON VIGLE,
D. KRIST,
DAVID ALLRED,
WENDY HEIM,
CARL MESTAS,
BARBARA BATULIS,
BRAD CINK,
R. MACK,
STEVEN NAFZIGER,
SARA REVELL,
JONES "FNU",
DAN ROY,
RICK MARTINEZ,
B. CUNNING,
SPROUL "FNU",
OLMSTEAD "FNU", and
B. JANUS,

      Defendants.
_____

## OPINION AND ORDER GRANTING, IN PART, MOTIONS TO DISMISS
_____

**THIS MATTER** comes before the Court pursuant to Motions to Dismiss by Defendants

Janus, Mestas, and Olmstead (**# 175**); Heim, Martinez, and Roy (**# 176**); Krist (**# 177**); Cunning,

Mack, Merrill, and Powley (**# 178**); Allred, Cink, and Nafzinger (**# 179**); the Federal Bureau of

Prisons ("BOP") (**# 180**); Jones (**# 181**); Batulis and Vigle (**# 182**); Revell (**# 183**); Wiley (**#184**),

and Gomez and Sproul (**# 185**), and the corresponding response and replies.[1]

## FACTS

According to Mr. Ajaj's Third Amended Complaint (**# 167**), at all times relevant, he was

a prisoner in the custody of the BOP, assigned to the Administrative Maximum Facility ("ADX")

in Florence, Colorado.  Mr. Ajaj specifically denominates 10 claims for relief in his complaint[2]:

(i) religious discrimination, arising under *Bivens* (*i.e.* violations of the Free Exercise clause of

the 1st Amendment and the Equal Protection clause of the $14^h$ Amendment ), the Religious

Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*; the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*; the Administrative

Procedures Act ("APA"), 5 U.S.C. § 502 *et seq.*, and 42 U.S.C. § 1981, based on a variety of

alleged actions by the BOP that Mr. Ajaj contends inhibit his ability to practice his religion,

---

[1] It is unclear why the Defendants – all of whom are represented by the same counsel – filed 10 separate motions to dismiss rather than a single, consolidated motion.  The motions share certain common factual recitations and legal arguments, which are thus repeated as many as 10 times.  Unfortunately, this has had the effect of needlessly multiplying the proceedings to the detriment of the Plaintiff and public resources.  Although the Court recognizes that the Defendants have grouped the motions based on the particular conduct alleged against them, the Court is confident that both it and the parties could readily address the particular circumstances applicable to each individual Defendant even if the matter was presented in a single motion.

[2] Arguably, some of the stated claims contain, within their factual allegations, assertions that could give rise to additional permutations of claims of the type expressly asserted by Mr. Ajaj, or additional claims not specifically identified by him.  In assessing Mr. Ajaj's Third Amended Complaint, the Court has kept in mind both its obligation to construe Mr. Ajaj's *pro se* pleadings liberally, and its obligation to avoid becoming an advocate for Mr. Ajaj.

including denial of religious meals, religious property, and worship opportunities, among others; (ii) a claim that the conditions of his confinement are inhumane and thus violative under *Bivens* (*i.e.* violations of the 8th Amendment), and several international treaties; (iii) a claim that several convictions of Mr. Ajaj for disciplinary violations were unjust, arising under *Bivens* (among the constitutional provisions Mr. Ajaj identifies as being implicated are the 1st, 5th, 8th, and 14th Amendments), 42 U.S.C. § 1981, 42 U.S.C. § 1985, the APA, the Alien Tort Claims Act ("ACTA"), 28 U.S.C. § 1350, and the Rehabilitation Act of 1973, 29 U.S.C. § 794; (iv) claims relating to the handling of Mr. Ajaj's legal and non-legal mail, arising under *Bivens* (violation of the 1st and 5th Amendments), the APA, and the ACTA; (v) a claim that BOP policies prevent him from having meaningful visits with friends and family, both in-person and by video, arising under *Bivens* (violations of the 1st and 14th Amendments), the Rehabilitation Act; the APA, and the ACTA; (vi) that restrictions on Mr. Ajaj's ability to make telephone calls concerning legal matters without first obtaining permission from BOP staff violate *Bivens* (1st and 5th Amendments) and the APA; (vii) that the BOP's restrictions on inmate's ability to receive or possess books and other publications violate *Bivens* (1st and 14th Amendments) and the APA; (viii) that the BOP has maintained inaccurate information concerning Mr. Ajaj in BOP records, in violation of the APA and the Privacy Act, 5 U.S.C. § 552a(e)(5); (ix) that he has been deprived of necessary medical treatment for a variety of ailments, in violation of *Bivens* (8th Amendment), a variety of international treaties, the APA, the Rehabilitation Act, and the ACTA; and (x) tort claims asserted against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), sounding in medical malpractice.

Other than the United States, each the Defendant has moved to dismiss **(# 175-185)** the

claims against them, most alleging that Mr. Ajaj fails to state a cognizable claim under Fed. R.

Civ. P. 12(b)(6) and that the Defendants are entitled to qualified immunity on claims that Mr.

Ajaj has stated.  The Court will address the particular arguments raised in these motions as part

of its analysis.

## ANALYSIS

### A.  Standard of review

#### 1.  *Pro se* status

In considering Mr. Ajaj's filings, the Court is mindful of his *pro se* status, and

accordingly, reads his pleadings liberally.  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

However, such liberal construction is intended merely to overlook technical formatting errors

and other defects in his use of legal terminology and proper English.  *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Mr. Ajaj of the duty to comply with

the various rules and procedures governing litigants and counsel or the requirements of the

substantive law, and in these regards, the Court will treat Mr. Ajaj according to the same

standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. U.S.*, 508

U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  In

construing the pleadings liberally, the Court will not take on the responsibility of serving as Mr.

Ajaj's attorney in constructing arguments and searching the record.  *Garrett v. Selby Connor

Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)

#### 2.  Rule 12(b)(6)

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all

well-plead allegations in the Complaint as true and view those allegations in the light most

favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis.  A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  *Iqbal*, 129 S.Ct. at 1949. The cases make clear that it is facts, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id.* at 1949-50. Moreover, the facts pled must demonstrate a claim that is "plausible," *i.e.* one in which the alleged facts demonstrate more than just an abstract "possibility" that the defendant has engaged in actionable misconduct. *Id.*  One way in which the Court might conduct its analysis is to

"identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them.  Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.

### B.  Religious discrimination claims

For purposes of efficiency, the Court will address the claims in the order in which they are presented in Mr. Ajaj's Third Amended Complaint.

Turning first to the religious discrimination claims, Mr. Ajaj purports to raise *Bivens* claims invoking the Free Exercise clause of the 1st Amendment, the Equal Protection clause of the 14th Amendment, the RFRA, RLUIPA, the APA, and 42 U.S.C. § 1981.  The Court first addresses the elements that must be alleged to satisfy each claim.

### 1.  Legal standards

For purposes of Mr. Ajaj's pleading burdens, *Bivens* claims under the Free Exercise clause, claims under RLUIPA, and claims under the RFRA all impose the same requirements: Mr. Ajaj must allege facts showing that a particular action by a particular Defendant "substantially burdened his sincerely-held religious beliefs."[3]  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (Free Exercise claim); *Kay v. Bemis*, 500 F.3d 1214, 1218-19 (10th Cir. 2007) (RLUIPA claim); *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001) (RFRA claim).   Governmental action may impose a "substantial burden" on religious exercise where it: (i) requires participation in an activity prohibited by a sincerely held religious belief; (ii)

---

[3]The burden that shifts to the Defendants upon Mr. Ajaj's *prima facie* showing differs, based on the claims being asserted.  *See e.g. Kay*, 500 F.3d at 1221 (noting that burden on government in RLUIPA claim is different than that under the Free Exercise clause).

prevents participation in conduct motivated by such a belief; or (iii) places substantial pressure on an adherent to act contrary to such a belief. *Strope v. Cummings*, 381 Fed.Appx. 878, 881 (10th Cir. 2010), *citing Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1212-15 (10th Cir. 2010). Mere "inconvenience" – such as isolated or sporadic incidents burdening religious exercise – does not suffice as a "substantial burden." *Id.*

The APA authorizes the Court to examine final agency actions – including decisions reached by the BOP – to ensure that they are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Jordan v. Wiley*, 2009 WL 1698509 (D. Colo. Jun. 17, 2009) (slip op.). Thus, to adequately plead an APA claim,[4] Mr. Ajaj must: (i) identify a decision by a Defendant that constitutes a "final agency action"; and (ii) allege facts showing that the action was arbitrary, capricious, or otherwise not in accordance with law. A "final agency action" is one that "constitutes a definitive statement of the agency's position with direct and immediate consequences." *Assn. of Intl. Auto Mfrs. v. Commissioner*, 208 F.3d 1, 5 (1st Cir. 2000).

Mr. Ajaj asserts *Bivens* claims sounding in violation of the 14th Amendment's Equal Protection clause. To state a claim under the Equal Protection clause, Mr. Ajaj must allege facts showing: (i) that a particular Defendant treated him differently from another individual or group of individuals; and (ii) the reason for that treatment was Mr. Ajaj's religion. *Abdulhaseeb*, 600 F.3d at 1322 n. 10.

Finally, Mr. Ajaj asserts claims under 42 U.S.C. § 1981, which prohibits discrimination

---

[4]The Court notes that the United States has waived its sovereign immunity with regard to APA claims only for purposes of granting injunctive relief. 5 U.S.C. § 702; *Armendariz-Mata v. U.S. Dept. of Justice*, 82 F.3d 679, 682 (5th Cir. 1996).

against persons based upon their race.   To plead a claim under § 1981, Mr. Ajaj must allege

facts showing: (i) that he is a member of a protected class (*i.e.* that he is not white); (ii) that each

charged Defendant took some action against him that interfered with an activity protected under

§ 1981[5]; and (iii) that the Defendant took that action with the intent to discriminate against Mr.

Ajaj because of his race.  *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th

Cir. 2001).

Regardless of the claim being asserted, an essential element of any claim is a showing

that each named Defendant personally participated in the conduct giving rise to that claim.[6]  *See*

*McDaniels v. McKinna*, 96 Fed.Appx. 575, 579 (10th Cir. 2004) (unpublished); *Nelson v. Skehan*,

386 Fed.Appx. 783, 787 (10th Cir. 2010) (unpublished).  Allegations of personal participation,

like all other factual averments, must be specific, not conclusory.  *Ashcroft*, 129 S.Ct. at 1948,

1951.

---

[5]Section 1981 provides that non-white persons shall have equal rights "to make and
enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws
and proceedings for the security of persons and property as is enjoyed by white citizens."

[6]Most of Mr. Ajaj's religious claims name the BOP itself as a Defendant, in addition to
identifying one or more individuals.  As an entity, the BOP's liability for constitutional
deprivations is necessarily vicarious of liability imposed against those individuals purporting to
act on the BOP's behalf and in furtherance of its policies.  But *Ashcroft* has called the very
notion of vicaious *Bivens* liability into question.  *See Arocho v. Nafzinger*, 367 Fed.Appx. 942,
947 n. 4 (10th Cir. 2010) (unpublished); *but see Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th
Cir. 2010) (recognizing that a supervisor's liability for maintaining a policy that caused the harm
can give rise to liability).

Logically, to the extent that the BOP can still be held liable for deprivations committed
by its employees, it is so only via claims asserted against those employees in their official
capacities.  Like any claims asserted against individuals, those official capacity claims must
adequately allege facts showing the individual's personal participation in the conduct at issue.
Thus, where the Court dismisses claims against all named individuals for Mr. Ajaj's failure to
adequately allege personal participation, dismissal of those same claims against the BOP must
follow.

2. <u>Sufficiency of allegations</u>

With these principles in mind, the Court turns to Mr. Ajaj's specific allegations.  Mr. Ajaj asserts a variety of actions that he contends substantially burden his religious exercise as a Muslim, including: (i) failure of certain Defendants to provide him with *halal* meals and snacks; (ii) certain Defendants' refusal to permit him to engage in congregational prayers; (iii) interference with or refusal of his ability to properly celebrate religious holidays by certain Defendants; and (iv) refusal by certain Defendants to permit him to obtain and possess religious items, among many others.  The Court understands that, in most respects, the Defendants do not dispute that Mr. Ajaj's religious beliefs are sincere, nor do they dispute that Mr. Ajaj has frequently identified practices that would pose a substantial burden to those beliefs.  Rather, the primary argument raised by most Defendants with regard to Mr. Ajaj's religious discrimination claims is that Mr. Ajaj has failed to plead more than conclusions indicating each Defendants' alleged personal participation in the conduct at issue.

The Court agrees with the Defendants that many of Mr. Ajaj's allegations of personal participation are impermissibly conclusory.  For example, paragraph 46 of the Third Amended Complaint states "Defendants [BOP], Wiley, Gomez, Merrill, Powley, Sproul, Smith, and others substantially burdened [Mr. Ajaj's] exercise of his religion by banning and forbidding him from performing the Jumu'ah prayer and all other congregational prayers, by banning the performance of Azan ritual, [and burdening other religious practices]."  This allegation states no more than Mr. Ajaj's conclusion that each named Defendant performed all (or some) of the acts described in this paragraph.  It does not, however, state what facts led Mr. Ajaj to the conclusion.  For example, it does not state how Mr. Merrill was  responsible for preventing the Jumu'ah prayer,

or how Mr. Sproul was involved with banning the Azan ritual, etc.  *See e.g. Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("given . . . a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"). Without such facts, the Court is prevented from ascertaining whether Mr. Ajaj has stated a claim that is 'plausible," not merely "possible."  *Ashcroft,* 129 S.Ct. at 1949.

Put differently, without an identification of the specific acts that each Defendant performed to prevent Mr. Ajaj from engaging in the religious exercises he desires, this paragraph does not "allow[ ] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged."  *Id.*  If, for example, Mr. Ajaj alleged that he asked Defendant Powley (identified in the Third Amended Complaint as a Chaplain at ADX) to grant Mr. Ajaj a pass to leave his cell and attend a Jumu'ah prayer and that Mr. Powley refused, that allegation might plausibly demonstrate Mr. Powley's personal participation in a burdening of Mr. Ajaj's religious exercise.  But if, on the other hand, the theory behind Mr. Ajaj's conclusion that Mr. Powley "forbid[sic]" Mr. Ajaj from attending such a prayer is simply that Mr. Ajaj believes that Mr. Powley, as a Chaplain at ADX, should be held responsible for any allegedly unconstitutional practice relating to religion, or that Mr. Powley did not of his own initiative convene a Jumu'ah prayer for Muslim inmates that Mr. Ajaj could attend, the Court might conclude that Mr. Ajaj's allegations do not state a plausible – that is, a cognizable – claim against Mr. Powley.

Because Mr. Ajaj's contentions in paragraph 46 give no indication of how Mr. Ajaj concluded that each of the named Defendants was allegedly personally involved in forbidding the Jumu'ah prayer and the Azan ritual (along with the other actions alleged in the paragraph),

the Court finds that the paragraph fails to state a cognizable claim against those Defendants under *Ashcroft*.

Similarly, paragraph 49 conclusively states "Defendants BOP, Wiley, Merrill, Powley, Revell, Jones, Cunning, and others refused to provide [Mr. Ajaj] a *halal* diet."  Once again, this paragraph provides no explanation as to how Mr. Ajaj concluded that Mr. Merrill – a Chaplain – "refused to provide [him] a *halal* meal," or how Mr. Wiley, the Warden, "refused" to do so.[7]  As a result, these assertions fail to state a plausible claim for each Defendant's personal participation in not providing Mr. Ajaj a *halal* meal.

Paragraph 66 contends that "Defendants BOP, Wiley, Gomez, Sproul, [etc.] improperly and intentionally interfered with [Mr. Ajaj's] ability to properly observe the Holy Month of Ramadan and their interference at different times were and are motivated by their personal animus toward followers of [Mr. Ajaj's] religion."  Again, this paragraph is impermissibly conclusory, both insofar as the contention that any Defendant "interfered" with Mr. Ajaj's observance of Ramadan offers nothing more than a conclusion (*i.e.* the means by which the "interference" occurred are not stated), and insofar as it fails to specifically identify which "interfering" actions were taken by which Defendants.

Thus, these claims also fail to comply with *Ashcroft*'s requirement that Mr. Ajaj plead more than conclusory assertions of personal participation.  For the same reasons, the Court finds

---

[7]For example, did Mr. Merrill refuse to certify that Mr. Ajaj's was a eligible for a *halal* diet, or did he simply fail to take notice of the fact that certain foods being served by ADX's food service had undisclosed pork ingredients?  Did Mr. Wiley announce that he was purposefully discontinuing *halal* meals at ADX, or is Mr. Ajaj assuming that Mr. Wiley, as Warden, should be deemed responsible for, say, the ADX's Food Service Director's independent decision to discontinue *halal* meals?

that the allegations in paragraphs 69, 71-75, 77, 78-81, 84, 86-88, 90-92, 94, 101, 106, 108-110,

112 (and all its subparts, with the arguable exception of subpart (j)), 113 (with the exception of

the allegation against Defendant Batulis), 114-117, 120, and 122-123 fail to adequately allege

non-conclusory facts identifying each Defendant's personal participation in the deprivations.

Only paragraphs 70, 96, 112(j), and the allegation against Ms. Batulis in paragraph 113

contain contentions that arguably identify particular conduct by a particular Defendant. The

Court examines each of those paragraphs in detail.

Paragraph 70 alleges that Mr. Powley "failed to notify [Mr. Ajaj] of the start and the end

of the holy month of Ramadan," resulting in Mr. Ajaj's "inability to properly observe Ramadan."

This paragraph identifies only Mr. Powley as the actor engaging in the conduct.  One might thus

argue that this contention demonstrates Mr. Powley's personal participation in the conduct

alleged.  However, this Court disagrees.  As discussed above, the requirement that an inmate

specifically identify <u>facts</u> showing how a particular defendant engaged in the conduct at issue is

imposed in order to permit the Court to make the required determination as to whether the basis

upon which the plaintiff seeks to hold the defendant liable is "plausible." *Ashcroft,* 129 S.Ct. at

1949; *Robbins,* 519 F.3d at 1250.  As a result, Mr. Ajaj's failure to explain the facts that lead him

to conclude that Mr. Powley "failed to notify" him about the start and end of Ramadan prevents

the Court from engaging in the plausibility analysis.  The facts may be that Mr. Ajaj specifically

requested, and Mr. Powley specifically promised, that Mr. Powley would take responsibility for

notifying Mr. Ajaj when the holiday began and ended.  Under these circumstances, Mr. Ajaj's

allegation that Mr. Powley failed to carry out the promised duty might give rise to a plausible

claim.  On the other hand, the facts may be that Mr. Ajaj believes that Mr. Powley, an ADX

Chaplain, should know and by virtue of his office is obligated to inform Muslim inmates of the beginning and ending of the holiday, and that he did not do so.  If these are the facts that Mr. Ajaj were to set forth, the Court would be far less likely to conclude that this stated a plausible (or cognizable) claim against Mr. Powley.  Because paragraph 70 gives the Court no basis to ascertain the means by which Mr. Ajaj has reached the conclusion that Mr. Powley is legally culpable for failing to inform Mr. Ajaj of the start and end of Ramadan, the Court finds that this allegation fails to adequately allege Mr. Powley's personal participation in a burdening of Mr. Ajaj's religious exercise.

Paragraph 96 alleges that the BOP and Mr. Wiley denied Mr. Ajaj's "repeated requests for visits with his parents and relatives via video-conference or the internet without proper justification."  In the prior paragraph, Mr. Ajaj states that his religion "requires him to maintain a close relationship with his parents and his relatives and to treat them with kindness and to show his gratitude to them,". Mr. Ajaj later states that his parents and family live overseas and are unable to travel to the United States to visit in person.

The Court finds that this allegation fails to state a claim because it does not adequately allege a "substantial burden" on Mr. Ajaj's religious exercise.  As described by Mr. Ajaj, his religion requires him to "maintain a close relationship with his parents and relatives."  Mr. Ajaj does not indicate that his religion precludes him from maintaining that relationship through means other than live, face-to-face communication – for example, through telephone calls and written correspondence.  In the absence of an allegation that explains why alternative means of communication with his family are insufficient to means to exercise the religious edict of maintaining a close relationship with family, Mr. Ajaj has alleged facts showing only that the

13

lack of videoconferenced visits with his family constitute a mere "inconvenience" to his religious exercise, not a "substantial burden."  Accordingly, this allegation fails to state a cognizable claim.

Paragraph 112(j) alleges that Mr. Merrill and Mr. Powley "broadcast [Islamic programs via the closed circuit t.v. channel] at times while inmates are sleeping or in recreation to prevent them from watching or to force them to choose between recreation and watching the Islamic programs."  Arguably, this paragraph can be read to imply that both Mr. Merrill and Mr. Powley have the ability to schedule when Islamic programming is shown on the facility's television channel, and thus, that they have personally participated in depriving  Mr. Ajaj's of his right to practice his religion by scheduling  Islamic programming at inconvenient times.

Even with this interpretation,  the Court finds that this allegation fails to adequately demonstrate a "substantial burden" on Mr. Ajaj's religious exercise.  Assuming that Mr. Ajaj has adequately alleged that watching these programs is a form of religious exercise, he has alleged nothing more than the fact that Mr. Merrill and Mr. Powley's scheduling decisions cause Islamic programming to play at times that are inconvenient to Mr. Ajaj, insofar as there are other activities he would like to engage in at that time.  In essence, Mr. Ajaj must choose between watching the programs or doing something else.

This "burden" is not unusual; it is experienced by adherents of all religious faiths, both inside and outside of prison. It is not uncommon to encounter situations where desirable secular activities occur at the same time as religious ones, forcing adherents to choose whether they

would rather engage in the religious activity or the secular one.[8]  Thus, the Court cannot find that Mr. Ajaj has alleged a substantial burden, but instead a "mere inconvenience," with regard to the scheduling of broadcasts of Islamic programming.

Finally, the Court turns to a portion of paragraph 113.  Most of that paragraph suffers from the same lack of specific facts explaining how each of the many listed defendants personally participated in "discriminat[ing] against Arab and Muslim inmates" described above. (The fact that paragraphs 113-115 are also entirely conclusory with regard to describing the forms in which this "discrimination" takes is a separate basis to dismiss any claim premised upon these paragraphs.)

Paragraph 113 does specifically identify one particular action by Ms. Batulis -  that she gave an "interview with the CBS '60 Minutes' program," during which, Mr. Ajaj alleges (by conclusion), she "displayed her known hatred and prejudice toward Arabs and Muslim prisoners."  However, the fact that Ms. Batulis gave an interview – even one in which she expressed some form of racial or religious prejudice – does not suffice to demonstrate that she personally participated in any particular burdening Mr. Ajaj's religious exercise.  Accordingly, Mr. Ajaj has not alleged any particular religious exercise claim against Ms. Batulis.

Thus, the Court finds that Mr. Ajaj has failed to adequately plead the necessary elements of any of the sub-claims that are arguably asserted in his first claim for relief, sounding in violations of his right to religious exercise.  Accordingly, the entire first claim for relief is

---

[8]For example, the dilemma faced by a Catholic who must choose between attending the day's only scheduled mass or going outside and enjoying the sunshine during a brief break between threatening storms faces largely the same dilemma as Mr. Ajaj's choice between taking advantage of a scheduled outdoor recreation session or staying in to watch the day's only broadcast of an Islamic program.

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### C.  Conditions of confinement claim

Mr. Ajaj's second group of subclaims contend generally that he has been subjected to extreme and inhumane conditions of confinement.  Among many other complaints, Mr. Ajaj contends that he is housed adjacent to mentally-ill inmates whose disruptive and unhygienic practices expose him to unsanitary conditions as a result of frequent strip searches, that his recreational opportunities are inadequate for a variety of reasons, and that he is not provided with palatable meals.  Mr. Ajaj contends that these conditions of confinement violate the 8th Amendment, as well as certain international treaties and the ATCA.

The same discussion above, regarding Mr. Ajaj's failure to adequately plead non-conclusory facts demonstrating the extent of each Defendant's personal participation in the challenged conduct applies with equal force to the conditions of confinement claim.  For example, paragraphs 129, 131-134, 136, 138-42, 144-46, 148-49, and 152 all allege conduct engaged in by multiple Defendants, but fail to offer any non-conclusory assertions that indicate what facts caused Mr. Ajaj to conclude that each particular named Defendant is legally responsible for that conduct.  The paragraphs listed constitute the entirety of that portion of the second claim for relief that asserts claims against the Defendants here, and thus, the entirety of the second claim for relief is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[9]

### D.  Disciplinary claims

Mr. Ajaj's third claim for relief appears to allege that Mr. Ajaj was improperly issued

---

[9]The Court summarily dismisses all purported claims asserted by Mr. Ajaj arising under the Alien Tort Claims Act and international treaties.  Such claims are patently inapplicable in the circumstances presented here.

notices of disciplinary violations, violating a variety of statutory and constitutional provisions.

As best the Court can determine from Mr. Ajaj's Third Amended Complaint, which does not

always clearly identify which disciplinary notice is being ddiscussed, Mr. Ajaj bases this claim

on three separate disciplinary notices.

First, he contends that in July 2008, he was instructed by Mr. Mestas to move his

belongings to a different cell pursuant to a regular "cell rotation" policy.  Mr. Ajaj contends that,

on that day, he was suffering from illness relating to a medication and had been placed on a

medical restriction against physical activities.  Mr. Ajaj contends that he had informed Mr.

Mestas and Mr. Ajaj's Unit Counselor of that fact, but that Mr. Mestas refused to exempt him

from the cell rotation assignment.  As a result, Mr. Mestas issued Mr. Ajaj a disciplinary notice

for "refusing to obey an order" and "refusing to work."  A few days later, these violations

proceeded to a disciplinary hearing before Mr. Olmstead and Mr. Janus (whom Mr. Ajaj alleges

"are known to be close friends and supporters of Mr. Mestas").   Mr. Ajaj contends that the

hearing "violated [his] basic due process rights and BOP's own rules and regulations," in that: (i)

Mr. Olmstead and Mr. Janus had the "sanctions and punishment" section of the hearing report

"completed and signed before conducting the hearing . . . thus finding [Mr. Ajaj] guilty prior to

the hearing"; (ii) they refused to permit Mr. Ajaj to call witnesses; (iii) they refused to permit

Mr. Ajaj to cross-examine Mr. Mestas; and (iv) they refused to consider Mr. Ajaj's submission

of his own written statement and supporting medical records.  Mr. Ajaj was apparently punished

for this disciplinary infraction by being removed from the "step-down" program (by which

inmates may eventually obtain a transfer to a less-restrictive prison), by losing telephone and

commissary privileges for a period of time, and by being confined to a disciplinary housing unit

"for many weeks," during which he was separated from his "legal and personal property."  Mr. Ajaj contends that Mr. Revell and Mr. Wiley "approved" of this punishment in some unspecified way, and thus, that they are liable as well.

Second, Mr. Ajaj contends that in September 2005, Ms. Sudlow – as part of an otherwise undescribed "conspiracy" with Mr. Wiley to retaliate against Mr. Ajaj for filing prison grievances  – issued Mr. Ajaj a "fabricated" disciplinary report.  The facts and circumstances surrounding this report are not specified in the Third Amended Complaint, other than Mr. Ajaj's allegation that Ms. Sudlow could not have observed the alleged misconduct (whatever it was) because she was "off-duty on the day of the alleged incident."  Mr. Ajaj alleges that Mr. Wiley and Mr. Gomez "conspired" to find him guilty of the offense alleged in Ms. Sudlow's report, and that among the punishments imposed as a result was "denying [him] placement in the step-down program."

A third incident report was issued at an unknown time[10] by Mr. Gomez for "conduct disruptive to security or the orderly running of a facility."  Again, the circumstances of this alleged infraction are not specified, other than Mr. Ajaj's assertion that the report was "retaliation for [his] exercising of his constitutional right . . . to peacefully declare a hunger strike."  A hearing on this report was apparently conducted by an unknown hearing officer, in which Mr. Ajaj contends that he was deprived of a number of rights at this hearing, including the right to call witnesses and present documents, to have an impartial hearing officer, and to have the claims against him proven by sufficient evidence.  The punishment imposed as a result of this

---

[10]The report was likely issued several weeks or months prior to February 2007, as Mr. Ajaj contends that he "completed all available BOP administrative remedies" relating to Mr. Gomez's incident report by that time.

violation appears to have included "more than two months" in a disciplinary housing unit (which entailed a loss of access to "educational, religious, and other programs"), loss of "property privileges" for a month, a denial of placement in the step-down unit, and some period of time in which Mr. Ajaj was placed in a "dry cell," during which he was required to sleep "on a mattress soaked with urine and human waste."

Mr. Ajaj's claim purports to assert violations of the 1st, 5th, 8th, and 14th Amendments), 42 U.S.C. § 1981, 42 U.S.C. § 1985, and the APA.

Before turning to the particular substantive claims, the Court first performs the task suggested by *Twombly* and *Iqbal*: identifying and discarding those allegations by Mr. Ajaj that assert conclusions, rather than facts. *Iqbal*, 129 S.Ct. at 1949-50. Most notably, Mr. Ajaj's allegations of Defendants "conspiring" with each other are entirely conclusory. At a minimum, an allegation of a conspiracy must include assertions of "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 127 S.Ct. at 1965. Simply stating that two or more individuals "conspired" or "agreed" to perform an act "might well be sufficient in conjunction with a more specific allegation . . . but a court is not required to accept such terms [alone] as a sufficient basis for a complaint." *Id.* at 1966, *quoting DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). Because Mr. Ajaj offers nothing more than naked assertions that various Defendants "conspired" or "agreed" to do some act, the Court disregards those assertions.[11]

The Court also disregards, as conclusory, the entire reference to the second disciplinary

---

[11]This is sufficient to dispose of any contention by Mr. Ajaj arising under 42 U.S.C. § 1985, as a colorable allegation of a conspiracy is an essential element of such a claim.

violation – the September 2005 report issued by Ms. Sudlow.  Mr. Ajaj does not identify, with
any degree of factual specificity, the nature of the incident report or the punishment he received
for it (other than, arguably, that the violation may have "justif[ied] denying [his] placement in
the step-down program").  The crux of Mr. Ajaj's complaint regarding this notice is that Mr.
Wiley and Mr. Gomez found him guilty of it "despite the fact that they had unrefutable evidence
that proves beyond any doubt that [Mr. Ajaj] was innocent."  But Mr. Ajaj's pleading does not
give any indication of what this "unrefutable evidence" was, nor how it rebutted Ms. Sudlow's
allegations.  Without such explanation, Mr. Ajaj's contention that the hearing result was
unjustified is itself a conclusion, and thus, not subject to consideration under *Twombly* and *Iqbal*.

The Court is thus left to consider only whether Mr. Ajaj has stated any cognizable claim
with regard to either of the two remaining disciplinary notices.  For purposes of efficiency, the
Court will first consider whether Mr. Ajaj state a 5th Amendment due process claim with regard
to both notices, and then will consider any remaining cognizable claims arise from each
individual notice.

The 5th Amendment protects against the deprivation of liberty or property without due
process of law.  To sufficiently plead a due process claim, Mr. Ajaj must allege facts showing:
(i) that he was deprived of a liberty or property interest; and (ii) that the procedures required
prior to such a deprivation were not properly observed.  *Swarthout v. Cooke*, 131 S.Ct. 859, 861
(2011); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("those who seek to invoke [the due
process clause's] procedural protection must establish that one of these interests is at stake").
Mr. Ajaj does not allege that he was ultimately deprived of any particular property as a result of
his disciplinary convictions, and thus, the question is whether he was deprived of any liberty

interest.

Liberty interests arise either "from the Constitution itself, by reason of guarantees implicit in the word 'liberty'," or they "may arise from an expectation or interest created by state laws or policies." *Wilkinson*, 545 U.S. at 221.   Courts have been extremely reluctant to derive liberty interests wholesale from the Constitution where the interest related to the particular conditions of an inmate's confinement, noting that the fact of an inmate's conviction gives rise to a "range of custody" options that the state might lawfully impose.  *Id.*, *citing Meachum v. Fano*, 427 U.S. 215, 225 (1976).  At one point in time, the courts recognized liberty interests in conditions of prison confinement created by state (or, here, federal) policies or regulations, but that approach was abandoned by the Supreme Court in *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995), and the current standard requires an inmate claiming a liberty interest in conditions of confinement to show that the challenged conditions "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.*; *Wilkinson*, 545 U.S. at 222-23 ("the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life").  In short, to show that his disciplinary convictions resulted in the deprivation of a liberty interest, Mr. Ajaj must plead facts showing that punishments imposed for those convictions created conditions of confinement that are "atypical and significant hardships" compared to ordinary prison life.

He has not done so.  Mr. Ajaj alleges that his convictions resulted in him not obtaining access to, or being terminated from, the step-down program; periods of disciplinary segregation

of "many weeks" and "more than two months"; temporary loss of various privileges or opportunities to access certain programs, and an unspecified period in a "dry cell." None of these punishments impose "atypical and significant" hardships. *See e.g. Muhammad v. Hood*, 100 Fed.Appx. 782, 783 (10th Cir. 2004) (unpublished) (expulsion of inmate from ADX step-down program does not give rise to liberty interest); *Muhammad v. Finley*, 74 Fed.Appx. 847, 849 (10th Cir. 2003) (disciplinary segregation and loss of commissary privileges does not give rise to liberty interest); *compare Mendoza v. Blodgett*, 960 F.2d 1425, 1429 (9th Cir. 1992) (finding liberty interest in confinement to a "dry cell" only because prison regulations limited officials' discretion to impose it, effectively abrogated by *Sandin*). Accordingly, Mr. Ajaj has failed to state a cognizable due process claim based on his disciplinary convictions.

The Court then considers whether either disciplinary notice, individually, gives rise to any other cognizable claim. Turning first to the notice issued by Mr. Mestas, Mr. Ajaj alleges that Mr. Mestas "had a history of making racial comments about [Mr. Ajaj]" (thus arguably giving rise to claims of race discrimination under § 1981 and violation of Equal Protection under the 14th Amendment) and that he "fabricated incident reports against inmates who complained against him" (thus arguably giving rise to claims for First Amendment retaliation). However, the Court finds that Mr. Ajaj has not alleged facts showing that Mr. Mestas' violation notice was motivated by either Mr. Ajaj's race or his prior complaints. Rather, Mr. Ajaj effectively acknowledges that the true reason Mr. Mestas issued the notice was because Mr. Ajaj admittedly refused an order to change cells (claiming to have medical permission to do so). In any event, the Court would conclude that, to the extent Mr. Ajaj purports to assert race discrimination, Equal Protection, or retaliation claims based on Mr. Mestas' disciplinary notice, the Third

Amended Complaint fails to allege specific, non-conclusory facts sufficient to support such claims.

Mr. Ajaj also asserts that Mr. Mestas' issuance of the disciplinary notice in response to Mr. Ajaj's medically-based refusal to move cells constitutes a violation of the Rehabilitation Act. Construed broadly, the Rehabilitation Act prohibits public entities from discriminating against a "qualified individual with a disability . . . solely by reason of her or his disability" and imposes a duty on the public entity to reasonably accommodate an individual's disabilities. 29 U.S.C. §794(a). Assuming, without necessarily finding, that Mr. Ajaj has adequately pled facts establishing himself as a "qualified individual with a disability" under the Rehabilitation Act, the Court nevertheless agrees with Mr. Mestas that relief under the Rehabilitation Act is not available against individuals in their individual capacities. *Montez v. Romer*, 32 F.Supp.2d 1235, 1240-41 (D. Colo. 1999). Because Mr. Ajaj's Rehabilitation Act claim would be asserted against Mr. Mestas in this capacity, it is subject to dismissal. Thus, Mr. Ajaj has failed to state a cognizable claim against Mr. Mestas.

Mr. Ajaj's remaining claim directed at the disciplinary notice issued by Mr. Mestas is an APA claim, essentially asserting that Mr. Olmstead and Mr. Janus' decision to find Mr. Ajaj guilty of the charges was arbitrary and capricious, in that Mr. Olmstead and Mr. Janus did not consider Mr. Ajaj's written statement and medical records in reaching that conclusion. Because the APA does not contemplate individual liability or monetary damages, 5 U.S.C. § 701, the Court construes this to be a claim asserted against the BOP for declaratory relief. The BOP's sole basis for seeking dismissal of this claim is that it has been rendered moot by Mr. Ajaj's transfer to another prison. It does not follow that transfer of Mr. Ajaj from ADX to another

23

facility moots an improper disciplinary conviction received during his stay at ADX; the Court assumes that inmate's complete disciplinary histories – not just their histories at their current prison – are regularly considered and evaluated throughout an inmate's sentence, and that Mr. Ajaj's conviction on Mr. Mestas' disciplinary notice could have consequences even at Mr. Ajaj's new facility.  Accordingly, the Court finds that Mr. Ajaj has adequately stated an APA claim against the BOP relating to the sufficiency of the evidence supporting his conviction of the disciplinary notice issued by Mr. Mestas.

The Court then considers the disciplinary notice issued to Mr. Ajaj by Mr. Gomez.  First, Mr. Ajaj invokes the First Amendment, alleging that Mr. Gomez issued him a disciplinary report as retaliation for Mr. Ajaj engaging in protected First Amendment activity – namely, a hunger strike.  To sufficiently plead a claim for First Amendment retaliation, Mr. Ajaj must allege: (i) that he engaged in conduct protected by the First Amendment; (ii) that he suffered some adverse action, sufficient to chill a person of ordinary firmness from continuing to engage in that protected conduct; and (iii) that there is a causal connection between his protected activity and the adverse action. *See Strope*, 381 Fed.Appx. at 883; *Zarska v. Higgins*, 171 Fed.Appx. 255, 259-60 (10th Cir. 2006) (unpublished).

The Defendants do not appear to dispute that a hunger strike can constitute activity protected by the First Amendment, and the Court agrees that, in certain circumstances, it can. *See e.g. Bruce v. Woodford*, 2009 WL 256930 (E.D. Ca. Feb. 3, 2009) (slip op.) (unpublished) (claim stated where prison officials told inmate that "he was breaking no rules with a hunger strike" called to protest certain restrictions, then later imposed discipline against him for doing so).  There is no doubt that prison disciplinary charges can amount to an adverse action.

24

*Zarska,* 171 Fed.Appx. at 259.  And, taking the Third Amended Complaint in the light most favorable to Mr. Ajaj, Mr. Gomez's disciplinary report for "conduct disruptive to security" was causally-connected to Mr. Ajaj's hunger strike, in that the hunger strike itself was the very conduct considered by Mr. Gomez to be "disruptive."  Under these circumstances, the Court finds that Mr. Ajaj has sufficiently pled a First Amendment retaliation claim against Mr. Gomez for the issuance of this disciplinary report.

However, the Court declines to deem that claim to also encompass Mr. Dunlap and Mr. Wiley.  Mr. Ajaj contends that, after Mr. Gomez issued the disciplinary notice, Mr. Dunlap and Mr. Wiley "conspired among themselves" to deprive Mr. Ajaj of various rights during his disciplinary hearing.  This allegation does not clearly indicate that either Mr. Dunlap or Mr. Wiley were the hearing officer(s) who adjudicated Mr. Gomez's notice – and thus agreed that Mr. Ajaj's First Amendment-protected hunger strike warranted punishment – and the Court is not inclined to attempt to infer the extent of these individuals' personal participation in the hearing process in light of Mr. Ajaj's conclusory assertions.  Accordingly, the Court finds that Mr. Ajaj has stated this claim only with respect to Mr. Gomez.[12]

To the extent Mr. Ajaj asserts race discrimination or Equal Protection claims premised on Mr. Gomez's disciplinary notice, the Court dismisses those claims for the reasons given above. Indeed, Mr. Ajaj makes no particular factual allegations of racial prejudice against Mr. Gomez.

Finally, the Court notes that Mr. Ajaj also appears to assert an APA claim against the BOP based on the hearing officer's finding that Mr. Ajaj was guilty of Mr. Gomez's allegations.

---

[12]The Court does not read Mr. Gomez's motion to specifically contend that this claim would be barred by the doctrine of qualified immunity because the right to be free of retaliation in these circumstances was not "clearly established."

As noted above, this claim essentially asserts that the hearing officer's decision was arbitrary and capricious, in that it was "based on insufficient evidence."  For the same reasons stated with regard to Mr. Ajaj's conviction on Mr. Mestas' disciplinary notice, the BOP's argument that this claim was mooted by Mr. Ajaj's transfer is without merit, and the Court finds that Mr. Ajaj has adequately pled an APA claim against the BOP.

Accordingly, Mr. Ajaj's third claim for relief adequately pleads: (i) a claim for declaratory relief against the BOP under the APA, alleging that his disciplinary convictions on Mr. Mestas and Mr. Gomez's disciplinary notices were arbitrary and capricious; and (ii) a claim for First Amendment retaliation against Mr. Gomez based on Mr. Gomez's decision to issue him a disciplinary notice based on his participation in a hunger strike.  In all other respects, this claim is dismissed.

### E.  Mail handling claims

Mr. Ajaj's fourth claim for relief contends that certain Defendants have violated his constitutional and statutory rights by: (i) opening and reading his legal mail; (ii) misdelivering mail sent by or to him; (iii) prohibiting him from engaging in written correspondence with other inmates; and (iv) reading legal mail kept in his cell.  Mr. Ajaj alleges that these actions violate the First Amendment's Free Speech clause[13] and the APA.

---

[13]The Court does not understand Mr. Ajaj to allege that interference with his legal mail implicated his right of access to the courts under the First Amendment.  He acknowledges that "in order to assert a claim arising from denial of meaningful access to the courts, prisoners must first establish actual injury," and goes on to assert that, with regard to other types of First Amendment claims based on mishandling of his legal mail, he "need not allege actual injury." Because he does not thereafter attempt to allege any actual injury, the Court assumes he is not attempting to assert an "access to the courts"-type First Amendment claim.

Because Mr. Ajaj's claims involving his legal mail do not implicate concerns of access to the courts, this Court sees no reason for his claims to differentiate between legal mail and non-

Prisoners have a basic First Amendment right to communicate by mail with persons outside the prison. *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010). That right includes the right to have incoming and outgoing mail processed unless a legitimate penological interest warrants otherwise, and it prohibits prison officials from "restrict[ing] mail simply to harass inmates or [confiscating] mail that complies with prison policy." *Id.* To adequately plead a claim that prison officials violated an inmate's First Amendment rights with regard to mishandling of mail, the inmate must allege facts showing that: (i) his mail was mishandled; (ii) that the particular named Defendant was responsible for that mishandling; (iii) that the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the basis for that mishandling was not reasonably related to a legitimate penological interest. *Id.* at 1187-88; *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996); *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (negligent mishandling of mail does not give rise to constitutional liability).

The Court finds that all of Mr. Ajaj's subclaims relating to the handling of his mail are merely conclusory. He alleges that Mr. Roy, Mr. Martinez, and Mr. Heim ("and their staff") "intentionally and deliberately engaged in an ongoing pattern and practice of mishandling, opening, reading, delaying and delivering [Mr. Ajaj's] mail to other inmates." The phrases "intentionally and deliberately" and "pattern and practice" are conclusions, and Mr. Ajaj does not allege any particular facts that lead him to the conclusion that one or more of the named Defendants acted in this way. Moreover, Mr. Ajaj does not identify facts that lead him to the conclusion that these particular Defendants personally participated in one or more of these

---

legal mail, and hereafter, the Court will simply assume that his mail claims do not seek to differentiate between the facility's policies regarding legal- and non-legal mail.

actions, much less allege facts showing that <u>each</u> of the named Defendants engaged in <u>each</u> of the listed practices – mishandling, opening, reading, etc. *See Robbins*, 519 F.3d at 1250 (plaintiff must specifically identify "exactly <u>who</u> did <u>what</u> to <u>whom</u>") (emphasis added). Paragraphs 193-196 and 197-98 suffer from similar defects.  Accordingly, the Court finds that Mr. Ajaj's fourth claim fails to adequately plead a cause of action.

### F.  Visitation claims

Mr. Ajaj contends that the BOP's visitation policies "prevent and impair meaningful visitation with family and other visitors without being necessary to any legitimate penological purpose," and that the policies "do not take into consideration individual circumstances."  As a result, he contends that these policies infringe upon "fundamental rights of association, privacy, liberty, and religious rights."  Specifically, he complains about: (i) not being allowed "contact" visits (instead, he is permitted visits only through a glass partition): (ii) that he is strip-searched before and after every visit and is forced to wear hand and foot shackles during the visit; and (iii) he is not allowed to conduct visits with relatives overseas through videoconferencing technology.

Once again, these claims do not sufficiently plead facts sufficient to show how each named Defendant personally participated in the conduct alleged.  Although he alleges that "Defendants BOP, Wiley, Gomez, and Sproul are refusing to allow [him] contact visits," he does not explain how he has concluded that each of these individuals are responsible for denying contact visits.  Presumably, the acts taken by Unit Managers, such as Mr. Gomez or Mr. Sproul, with regard to Mr. Ajaj's request for contact visits are different than the kind of acts taken by the Warden, Mr. Wiley, with regard to such requests.  Because Mr. Ajaj's conclusory pleading does

not permit the Court to assess the particular acts by each Defendant that he bases his claim on, his fifth claim fails to adequately state a viable claim. *Robbins*, *id.*

### G.  Telephone claims

Mr. Ajaj's sixth claim contends that various "telephone policies, practices, and acts were and are in violation of the First and Fifth Amendments," as well as the APA, because Mr. Ajaj "is not allowed to make legal phone calls to an attorney except when the attorney first calls BOP staff and obtains staff permission," and because Mr. Ajaj "is not allowed to make legal calls to legal aid centers, law firms, experts, paralegals, [etc.]"

This claim contains a single paragraph attributing this conduct jointly to Defendants BOP, Wiley, Gomez, and Sproul.  As discussed above, this consolidated and conclusory pleading fails to adequately allege facts showing what each named Defendant is actually accused of doing. *Id.* Accordingly, the Defendants are entitled to dismissal of the sixth claim.

### H.  Right to receive publications

In his seventh claim, Mr. Ajaj complains about several policies that limit his ability to obtain and retain certain amounts of reading material, policies that limit his ability to obtain unobjectionable-portions of reading materials that are partially censored by the BOP, policies relating to the keeping of Arabic and Islamic books in prison libraries, and restrictions on his ability to obtain and possess Arabic audio and video programs, among others.

Having reviewed each of the allegations contained in this claim, the Court finds that the claim is subject to dismissal for the same reasons discussed above with regard to Mr. Ajaj's failure to plead specific, non-conclusory facts showing the particular actions that each named

Defendant is alleged to have personally participated in.  Accordingly, the seventh claim is dismissed.


### I.  Privacy Act claim

Mr. Ajaj's eighth claim is asserted solely against the BOP, and contends that the BOP has maintained incorrect or incomplete information regarding Mr. Ajaj in BOP records.  Among other things, Mr. Ajaj contends that the BOP's records incorrectly state that Mr. Ajaj has been a member of certain Islamist organizations, and that incorrect information has improperly caused the BOP to deny Mr. Ajaj certain privileges and benefits.  Mr. Ajaj contends that the BOP's failure to correct this information violates the Privacy Act, 5 U.S.C. § 552a(e)(5) and the APA.

The Privacy Act contains restrictions on how agencies maintain and disseminate records and information.  Among other things, the Act  requires that agencies "maintain all records . . . with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness." 5 U.S.C. § 522a(e)(5).  To state a claim for relief based on this provision of the Privacy Act, Mr. Ajaj must allege: (i) he has been aggrieved by an adverse determination made by the BOP; (ii) the agency failed to maintain his records with the requisite degree of accuracy, (iii) the inaccurate records were the proximate cause of the adverse determination; and (iv) the agency's failure to maintain accurate records was willful.  *Gowan v. U.S. Dept. of Air Force*, 148 F.3d 1182, 1192 (10th Cir. 1998).  The BOP contend that Mr. Ajaj has failed to adequately allege these elements.[14]

---

[14]The Court has some doubt that this claim would be viable even if Mr. Ajaj plead sufficient facts to state a claim. The Privacy Act permits certain agencies – including those involving law enforcement and corrections – to exempt certain records from the scope of the

Although the Court has doubts that Mr. Ajaj has sufficiently alleged non-conclusory facts sufficient to establish the first two elements – an adverse determination and the inaccuracy of his records – the Court finds that Mr. Ajaj has completely failed to assert facts sufficient to satisfy the third element – that the inaccuracies in his records were the proximate cause of the adverse determinations he asserts.  For example, Mr. Ajaj does not allege facts that show that he was otherwise eligible for the relief he desired to obtain in each determination, nor does he allege facts that demonstrate that the BOP did indeed consider the allegedly inaccurate information when making its decision.  The Court also notes that Mr. Ajaj's allegations that the BOP's maintenance of inaccurate records was willful are also entirely conclusory.  Accordingly, the BOP is entitled to dismissal of this claim.[15]

## J.  Medical claims

Mr. Ajaj's ninth claim asserts that he has been deprived of appropriate medical treatment for a variety of ailments, in violation of his rights under the 8th Amendment.

The Court's prior findings that Mr. Ajaj has failed to adequately allege the personal participation of each named Defendant applies with equal force to most of the sub-claims contained in this claim.  The Court will specifically address two exceptions.

---

Privacy Act.  5 U.S.C. § 522a(j)(2).  The BOP has expressly invoked the right under the Act to exempt records maintained in its Inmate Central Records System, including inmate health records and security records, from the requirement that they be accurate.  28 C.F.R. § 16.97(a), (j).  Thus, records in the BOP's Central Records System are exempt from the provisions of §522a(e)(5), the very statute Mr. Ajaj relies upon.  *Miller v. Federal Bureau of Prisons*, 703 F.Supp.2d 8, 15 n. 3 (D.D.C. 2010).

[15]To the extent Mr. Ajaj intends this claim to assert a violation of the APA, in the sense that the adverse determinations he complains of were arbitrary and capricious, he has failed to identify the determinations at issue with sufficient specificity, nor explain why he believes that the reasons given by the BOP for those decisions are incorrect.

Paragraph 255 alleges that Mr. Ajaj suffers from Irritable Bowel Syndrome.  The first portion of that paragraph improperly asserts that several Defendants "deliberately denied [Mr. Ajaj] treatment" for that condition, without specifically identifying how each Defendant did so. However, the final sentence of that paragraph specifically ascribes certain conduct to a particular Defendant, Dr. Allred.  Mr. Ajaj contends that "Dr. Allred told [him] he would like to refer him to a specialist to perform tests, but because of [Mr. Ajaj's] criminal case and maximum security housing, he will not."  The Court finds that this particular allegation against Dr. Allred fails to state an 8th Amendment clam.

The 8th Amendment to the United States Constitution prohibits "cruel and unusual punishment."  Among the punishments prohibited by the 8th Amendment are those amounting to "wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Where a prison official exposes an inmate to unnecessary suffering by denying medical care, the 8th Amendment may be violated.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  However, the Constitution is only implicated in situations in which prison officials act purposefully to impose unnecessary pain on an inmate; "inadvertent" denials of care or negligent diagnosis or treatment does not rise to the level of an 8th Amendment violation.  *Id.* at 106

Thus, to adequately plead a constitutional claim for deliberate indifference to medical needs, an inmate must allege: (i) that he suffered from a serious medical need – that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it.  *See e.g. Sealock v.*

*Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The subjective component requires an examination into the defendant's actual state of mind.  To satisfy this element, the inmate must plead facts that show that the defendant both "actually knew of" and "deliberately disregarded" the fact that the inmate was suffering from a serious medical need.  *Boles v. Dansdill,* 361 Fed.Appx. 15, 18 (10th Cir. 2010) (unpublished), *citing Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  It is not sufficient for the inmate to plead facts showing a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives.  *Ramos*, *id.* at 575.  Rather, the inmate must show that a defendant "prevented [him] from receiving recommended treatment" or that the defendant "denied [him] access to medical personnel capable of evaluating the need for treatment."  *Id.*

Here, assuming that Mr. Ajaj's IBS is an objectively-serious medical condition warranting treatment, Mr. Ajaj has nevertheless failed to allege specific facts showing that Dr. Allred purposefully delayed or denied treatment for it.  Mr. Ajaj asserts only that Dr. Allred stated that he "would like to refer him to a specialist," but felt that he could not.  A statement that Dr. Allred would have "liked" to provide additional medical treatment to Mr. Ajaj is not the equivalent of an assertion that Dr. Allred delayed or denied medical treatment that he considered "necessary" to treat Mr. Ajaj's condition.  When a condition is susceptible to a variety of potential treatments, prison medical staff are not required to provide the most thorough, most expensive, or most preferred alternative; all that is required is that the prison officials provide a form of treatment that falls substantially within "accepted professional judgment, practice, or standards."  *See e.g. Fields v. Rahimparast*, 43 Fed.Appx. 966, 968 (7th Cir. 2002) (unpublished) (prison doctor's decision,  "in light of the prison's security concerns," to treat inmate's post-

operative complications with warm compresses instead of the apparently-preferred alternative of a sitz bath did not give rise to an 8th Amendment violation); *Jamison v. Nielsen*, 32 Fed.Appx. 874 , 876 (9th Cir. 2002) (unpublished) (inmate who received medical treatment for miscarriage "may be able to show that another course of treatment might have been preferable," but would nevertheless fail to state 8th Amendment claim).  Here, the fact that Dr. Allred might, in a world of unlimited funds or nonexistent security concerns, have preferred to have Mr. Ajaj examined by a specialist does not amount to Dr. Allred demonstrating deliberate indifference to Mr. Ajaj's medical needs.

The only other paragraph from which the Court can ascertain particular actions performed by a particular person is paragraph 266, which states that "Defendants BOP and Jones refused to comply with a medical order to provide [Mr. Ajaj] with soy milk or any alternative to milk."  Because Mr. Jones is the only individual alleged to have acted in this manner, the Court will assume that Mr. Ajaj has properly identified facts demonstrating Mr. Jones' personal participation in this conduct.  Nevertheless, Mr. Ajaj has not adequately alleged facts showing that this "medical order" related to an objectively-serious medical condition, nor that Mr. Jones' refusal to comply with that order demonstrates his subjective indifference to Mr. Ajaj's health. Mr. Ajaj's assertion that Mr. Jones "refused" to comply with the instruction to provide a milk alternative is itself conclusory; Mr. Ajaj does not allege facts demonstrating Mr. Jones' knowledge of the directive, his ability to comply with it, nor the subjective inferences that Mr. Jones might have drawn about the effect on Mr. Ajaj's health if the order were not complied with. Under these circumstances, the allegations in paragraph 266 are insufficient to state an 8th Amendment claim against Mr. Jones.

Accordingly, the Court finds that nothing in Mr. Ajaj's ninth claim for relief is sufficient to state a claim, and the Defendants are entitled to dismissal of this claim.

### K.  Federal Tort Claims Act

Mr. Ajaj's final claim is asserted only against the United States and is pled as a violation of the Federal Tort Claims Act.  Specifically, Mr. Ajaj contends that the various defects in his medical treatment, as described in the ninth claim, reflect negligence on the part of the medical staff providing it.

As noted, this claim is asserted solely against Defendant United States, not the BOP or any individual Defendant.  As best this Court can determine, the United States has not moved for dismissal of this claim.  Accordingly, this claim will proceed.

### L.  Leave to replead

Mr. Ajaj's response to the Defendants' motion requests, in the event his claims are found to be deficient, leave to replead.

Rule 15(a) provides that leave to amend a pleading shall be "freely given."  Ordinarily, the Court should permit a *pro se* plaintiff leave to replead a complaint where the "factual allegations are close to stating a claim but are missing some important element that may not have occurred to him." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).  At the same time, leave to amend may be properly denied where the Court finds circumstances do not warrant it, such as where bad faith, undue delay, repeated failures to cure deficiencies as a result of previous amendments, or undue prejudice are present. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the Court notes that Mr. Ajaj commenced this action in September 2008 with a 55-page handwritten Complaint **(# 3)**, asserting 12 causes of action. Like the Third Amended

Complaint, Mr. Ajaj's original Complaint frequently alleged liability against groups of Defendants through collective allegations – *e.g.* "Defendants Wiley, Hood, Gomez, Shartle, Nalley, and Synsvoll prohibited [him] frm making legal calls to attorneys, paralegals, [etc.]"; "Defendants [BOP], Wiley, Hood, Merrill, Powley, Shartle, and Nalley refused to provide proper and *halal* meals. . . ."  In October 2008, the Magistrate Judge ordered (**# 7**) Mr. Ajaj to file an Amended Complaint, noting that, among other things, Mr. Ajaj "fails to allege sufficient facts demonstrating each Defendant's personal participation."  The Magistrate Judge went on to explain that Mr. Ajaj's amended pleading "must explain what each defendant did to him . . . Personal participation is an essential allegation in a civil rights action.  To establish personal participation, Mr. Ajaj must show that each Defendant caused the deprivation of a federal right."

In November 2008, Mr. Ajaj filed an Amended Complaint (**# 10**).  Although the Amended Complaint is shorter, both in terms of number of pages and number of claims asserted, that filing continued to allege claims against numerous Defendants in conclusory blocks – *e.g.* "Defendants [BOP], Wiley, Gomez, and Synsvoll's policies and practice of prohibiting plaintiff and other inmates from making legal calls to legal aid centers . . . are unconstitutional"; "Defendants Wiley, Merrill, and Powley refused to provide plaintiff with *halal* and proper meals. . . ."

In April 2009, the BOP filed a motion to dismiss (**# 35**) the Amended Complaint, arguing, among other things, that several of Mr. Ajaj's claims were impermissibly "conclusory," "generic and non-specific," and so "vague and ambiguous" as to warrant a more definite statement under Fed. R. Civ. P. 12(e).  The BOP complained that Mr. Ajaj's "lack of detail regarding the dates that incidents occurred and the identity of the individuals involved makes it

difficult" to formulate a complete response.  Giving the example of Mr. Ajaj's claims involving strip searches, the BOP's motion stated that Mr. Ajaj "provides no details as to when or where the searches were performed or who performed them"; with regard to Mr. Ajaj's complaints about inability to make telephone calls, the BOP argued that Mr. Ajaj did had not "disclosed . . . the specific staff members who allegedly denied his request to make or receive those calls."

Just over a week after the BOP filed its motion to dismiss, the Magistrate Judge conducted a Scheduling Conference (**# 40**) in the case.  At that hearing, Mr. Ajaj made an oral motion to extend the deadline for filing a Second Amended Complaint to June 16, 2009 (subsequently extended to August 2009), and the Magistrate Judge granted that request, directing that the BOP's pending motion to dismiss would be held in abeyance and that the BOP file a "status report" indicating how it intended to proceed on Mr. Ajaj's Second Amended Complaint.

On August 17, 2009, Mr. Ajaj filed his Second Amended Complaint (**# 68**), now asserting 14 causes of action in a 47-page handwritten pleading.  As before, the Second Amended Complaint continued to make conclusory allegations against groups of Defendants, failing to specifically identify how each Defendant engaged in the cited conduct – *e.g.* "Defendants [BOP], Wiley, Merrill, Powley, Revell, Jones, and Cunning denied plaintiff access to a *halal* diet . . . ."  As instructed, the BOP filed a Status Report (**# 70**), indicating its intention once again to move for dismissal of Mr. Ajaj's pleading.  Several Defendants, including Mr. Powley and Mr. Merril (**# 76**); Mr. Wiley (**# 77**), and the BOP (**# 78**), filed motions to dismiss the claims asserted against them, raising, among other things, arguments that Mr. Ajaj's allegations were insufficiently conclusory and failed to comply with the requirements of *Ashcroft* and *Iqbal*.

In January 2010, the Magistrate Judge convened another Scheduling Conference (**# 122**), and again Mr. Ajaj orally moved for an extension of time to February 26, 2010 to seek leave to file a Third Amended Complaint. The Magistrate Judge granted that request, and Mr. Ajaj timely moved (**# 137**) for leave to file his Third Amended Complaint, in part, to "clarify the claims raised in the Second Amended Complaint in compliance with *Iqbal*." The Magistrate Judge granted (**# 166**) that request.

Based on the foregoing, this Court finds that granting Mr. Ajaj yet another opportunity to attempt to replead his claims is unwarranted. Mr. Ajaj has been on notice since the Magistrate Judge's October 2008 Order of his obligation to allege facts showing the extent of each Defendant's personal participation in the conduct alleged, and despite three subsequent attempts to do so, Mr. Ajaj has continually failed to comply with that requirement. With each iteration of the complaint, Mr. Ajaj has been advised, either by the Court or by the Defendants, that his pleading of facts, particularly those relating to each Defendant's personal participation, were deficient, and yet those allegations remain uncorrected to this date. Indeed, the Court's brief review of each successive iteration of the complaint reveals, as quoted above, that Mr. Ajaj's manner of pleading claims against various Defendants has remained largely unchanged since the outset of this case. Mr. Ajaj's motion seeking leave to file a Third Amended Complaint expressly noted his recognition that his claims required repleading to comply with *Iqbal*, but as best the Court can determine, no truly meaningful modification of the manner in which Mr. Ajaj pled each Defendants' personal participation followed.

Under these circumstances, the Court finds that granting Mr. Ajaj a <u>fifth</u> opportunity to replead is not warranted. Mr. Ajaj has repeatedly had his pleading deficiencies brought to his

attention (and has himself acknowledged them) and has proven himself either unwilling or unable to remedy them.  There is no reason to believe that additional attempts to replead will result in this deficiency being cured.

In addition, the Court notes that this case is currently about 2½ years old, 2 full years of which is mostly attributable to Mr. Ajaj's repeated attempts to replead his claims.  Were the Court to allow yet another round of repleading (which would almost inevitably invite additional motions to dismiss from the Defendants), the case would almost certainly be in its third year before issue would be joined and discovery would begin.  Thus, the Court finds that Mr. Ajaj's current request for leave to again refine his pleading is the result of undue delay on his part.[16]

Accordingly, the Court denies Mr. Ajaj's request for leave to replead.

## CONCLUSION

For the foregoing reasons, the Motions to Dismiss by Defendants Janus, Mestas, and Olmstead (**# 175**); Heim, Martinez, and Roy (**# 176**); Krist (**# 177**); Cunning, Mack, Merrill, and Powley (**# 178**); Allred, Cink, and Nafzinger (**# 179**); Jones (**# 181**); Batulis and Vigle (**# 182**); Revell (**# 183**); and Wiley (**# 184**) are **GRANTED**, and Mr. Ajaj's claims against each of these Defendants are **DISMISSED** in their entirety pursuant to Fed. R. Civ. P. 12(b)(6).  The Motion to Dismiss by Defendants Gomez and Sproul (**# 185**) is **DENIED IN PART**, insofar as the Court finds that Mr. Ajaj's third claim for relief, to the extent it alleges that Mr. Gomez violated Mr.

---

[16]The Court would also find, to the extent necessary, that this delay would also be prejudicial to those individual Defendants who would be subjected to a third year of uncertainty as to the nature and extent of the claims for monetary damages that are asserted against them. Mr. Ajaj's demand for money damages from these individuals hangs over those Defendants who might be seeking certainty in financial planning or those who must report pending claims against them in applications for loans or insurance, among other things.

Ajaj's right to be free from retaliation for engaging in First Amendment activity based on a disciplinary notice issued to Mr. Ajaj by Mr. Gomez, adequately states a claim against Mr. Gomez, and **GRANTED IN PART**, insofar as all claims against Mr. Sproul and all other claims against Mr. Gomez are **DISMISSED**.  The BOP's Motion to Dismiss **(# 180)** is **DENIED IN PART**, insofar as the Court finds that Mr. Ajaj has stated cognizable claims for declaratory relief against the BOP under the APA, contending that the two decisions by hearing officers upholding the disciplinary notices issued to Mr. Ajaj by Mr. Mestas and Mr. Gomez, as discussed above, were arbitrary and capricious in that they were not supported by sufficient evidence, and **GRANTED IN PART**, insofar as Mr. Ajaj's remaining claims against the BOP are **DISMISSED**.  The caption of this case is **AMENDED** to reflect that only Mr. Gomez, the BOP, and the United States of America remain as Defendants.

Dated this 10th day of March, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge