IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02006-RBJ-MJW

AHMED M. AJAJ,

      Plaintiff,

      v.

FEDERAL BUREAU OF PRISONS,
THE UNITED STATES OF AMERICA, and
TOMAS GOMEZ,

      Defendants.

---

## AMENDED ORDER

---

This matter comes before the Court on defendants Federal Bureau of Prisons and United States of America's Motion to Dismiss [#388]. Plaintiff responded on January 17, 2012 [#454] and defendants filed their reply on January 23, 2012 [#457]. This order also addresses defendant Tomas Gomez's Motion for Summary Judgment, filed January 4, 2012 [#448]. Plaintiff did not respond to defendant Gomez's motion.

**Facts**

At all relevant times, Mr. Ajaj has been a prisoner assigned to the Administrative Maximum Facility ("ADX") in Florence, Colorado. A more thorough recitation of the facts and procedural history of this case can be found in this Court's previous orders. *See* Docket #275, 282, and 421.

On March 10, 2011 Judge Marcia Krieger granted several Motions to Dismiss, dismissing all defendants other than the United States, the Bureau of Prisons, and Tomas Gomez [#275]. Plaintiff has two remaining claims: Claims Three and Ten, as set forth in Plaintiff's Third

Amended Complaint [#167].  Defendants' Motion to Dismiss and Motion for Summary

Judgment seek to dismiss all remaining claims and defendants.

**Standard**

When a case involves a *pro se* party the court will "review his pleadings and other papers

liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v.

U.S. Government*, 472 F.3d 1242, 1243 (10th Cir. 2007).  However, "it is not the proper function

of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935

F.2d 1106, 1110 (10th Cir. 1991).  A broad reading of a pro se plaintiff's pleadings "does not

relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim

could be based…conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." *Id.*  Pro se parties must "follow the same rules of

procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)

(citing *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

**Conclusions**

**<u>Federal Bureau of Prisons and United States of America's Motion to Dismiss (#388)</u>**

Defendant Federal Bureau of Prisons ("BOP") and United States of America ("U.S.")

move the Court to dismiss the remaining claims asserted against them pursuant to Fed. R. Civ. P.

12(b)(1) for lack of jurisdiction.

A motion to dismiss brought under Rule 12(b)(1) generally may take two forms: "First a

moving party may make a facial attack on the complaint's allegations as to the existence of

subject matter jurisdiction…the district court must accept the allegations in the complaint as true.

Second, a party may go beyond allegations contained in the complaint and challenge the facts

upon which subject matter jurisdiction is based… In reviewing a factual attack, a court has wide

discretion to allow affidavits, [and] other documents..." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (internal citations omitted).  A court's consideration of evidence outside the pleadings does not convert the motion into a Motion for Summary Judgment under Rule 56.  *Id.*  A lack of subject matter jurisdiction may be challenged at any time.  Under Fed. R. Civ. P. 12(h)(3) the court must dismiss the action "if the court determines at any time that it lacks subject-matter jurisdiction."

Claim Three: "Unlawful Disciplinary Actions Claim"

The allegations contained in Mr. Ajaj's third claim arise out of an incident report issued by defendant Tomas Gomez in September 2005.  With regard to defendants BOP and the U.S., Mr. Ajaj challenges the sufficiency of the evidence to find him guilty of the charges alleged in Mr. Gomez's incident report and in a report filed by Carl Mestas.  As a result of the incident report, Mr. Ajaj alleges that he "lost good conduct time, earned credit, spent more than two months in total isolation in a special housing unit, lost property privileges for one month, and was denied placement in the step-down program," as well as other complaints.  [Doc. 167 at 177, 165].  In her March 10, 2011 Order, Judge Krieger described Mr. Ajaj's third claim as follows: "Mr. Ajaj also appears to assert an APA claim against BOP based on the hearing officer's finding that Mr. Ajaj was guilty of Mr. Gomez's allegations…this claim essentially asserts that that the hearing officer's decision was arbitrary and capricious, in that it was 'based on insufficient evidence.'" [Doc. #275 at p. 25-26].  All other bases, other than those premised on the Administrative Procedure Act ("APA"), were dismissed.  *Id.*

BOP and the U.S. argue that the Court lacks jurisdiction over Claim Three because review of the decision is expressly precluded by statute.  Generally, a reviewing court may "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706. However, certain decisions made by BOP are exempt from judicial review procedures. *See* 18 U.S.C. §3625. Specifically, the statute exempts decisions made under 18 U.S.C. § 3621-26 from the APA's judicial review provisions. These provisions include the place of a prisoner's imprisonment and good time credits. §§3621, 3624. The Tenth Circuit has held that 18 U.S.C. §3625 "bars APA review of BOP substantive disciplinary determinations involving the reduction of good time credits." *Jordan v. Wiley*, 411 Fed. App'x 201, 214 (10th Cir. 2011). Therefore, Mr. Ajaj's APA claim objection the reduction of this good time credits and the place of his imprisonment are expressly barred.

The Tenth Circuit has not addressed whether eligibility decisions for the Step-Down Unit program are also exempt from the APA's review provisions. However, in a recommendation to the court in *McMillan v. Wiley*, Magistrate Judge Mix found that "pursuant to the clear language of the statute, decisions about where to incarcerate an inmate (which, when ADX is involved, necessarily include consideration of whether an inmate is entitled to be placed in particular units pursuant to the Step-Down Unit Program), fall within §3621." 813 F. Supp.2d 1238, 1256 (D. Colo. 2011). Affirming the recommendation, Judge Daniel held that although this issue is not yet decided, based on the cited authority, the plaintiff's claim would be barred by statute. *Id.* This Court agrees with Judge Daniels and Magistrate Judge Mix that such a determination involves decisions as to where an inmate is to be placed, and thus is most likely barred by statute. Given the Tenth Circuit's reasoning in *Jordan*, this Court finds that BOP decisions regarding Mr. Ajaj's placement in the Step-Down Unit program are also barred. *See also Redmon v. Wiley*, 349 Fed. App'x 251, 256 (10th Cir. 2009).

Therefore, Mr. Ajaj's third claim cannot be reviewed by this Court under the APA and must be dismissed for lack of jurisdiction.

Claim Ten: "Federal Tort Claims Act against Defendant United States of America"

In Claim Ten, Mr. Ajaj asserts several tort claims against the U.S. under the Federal Tort Claims Act ("FTCA"). Specifically, Mr. Ajaj alleges that federal employees were negligent in providing medical care for his irritable bowel syndrome, chronic fatigue syndrome, insomnia, allergy, hands and feet numbness, and chronic back pain. [Doc. #162 at 40-41]. All tort claims against federal employees acting within the scope of their employment must be asserted pursuant to the FTCA. *See* 28 U.S.C. §2679(b)(1). A civil action brought under the FTCA cannot be instituted "unless the claimant shall have been finally denied by the agency in writing…" 28 U.S.C. §2675(a). After the denial of an administrative claim, the claimant then must assert their tort claim "within two years after such claim accrues or …within six months after the date of mailing…." 285 U.S.C. §2401(b). Failure to timely file a Standard Form 95 ("SF-95") results in the tort claim being "forever barred." *Id.*

Mr. Ajaj filed four SF-95s regarding his medical care from 2007 to 2010. Mr. Ajaj filed eight total administrative claims, but only four are relevant to his claims of negligence, medical malpractice, or personal injury. [Doc. #388, Ex. A, ¶2]. The first two SF-95s related to Mr. Ajaj's medical care are clearly untimely. The first SF-95 (Tort Claim TRT-NCR-2007-1204) was filed on December 15, 2006 and alleged that Mr. Ajaj had been exposed to high levels of noise by staff and improperly housed with or nearby mentally ill inmates. *Id.* at ¶3. As a result, Mr. Ajaj reported that he suffered deprivation of sleep, rest, and peace of mind, as well as other physical and psychological problems. BOP denied Mr. Ajaj's claim on April 23, 2007 by certified mail. The second SF-95 (TRT-NCR-2007-1428) was filed January 8, 2007 alleging that

Mr. Ajaj was not receiving medical treatment for his insomnia.  This request was denied February 13, 2007.  Mr. Ajaj had until October 13 and August 13, 2007, respectively, to file suit on these first two claims.  He did not do so, and the present action was not initiated until September 9, 2008.

The second two SF-95s filed for medical reasons are somewhat more problematic.  The third SF-95 was filed March 6, 2009 (TRT-NCR-2009-2822) alleging that BOP medical staff refused and/or failed to provide Mr. Ajaj with proper medical treatment and care for his chronic medical problems, such as chronic fatigue, insomnia, allergies, hand and foot numbness, and back and foot problems.  *Id.* at ¶5; Attachment 4.  This claim was denied May 19, 2009 by certified mail.  The fourth SF-95 was filed on May 14, 2009 and denied on November 18, 2009 (TRT-NCR-2010-4273).  In this SF-95 Mr. Ajaj alleged that BOP medical staff failed to provide medical care for chronic illnesses, failed to provide him with his allergy medicine, failed to provide him with a specialist for his hand and foot numbness, failed to provide care for his severe irritable bowel syndrome ("IBS"), and failure to accommodate his IBS when traveling and arranging cell assignments.  [Doc. #388, Exhibit A, ¶7; Attachment 6].

Mr. Ajaj filed the present lawsuit months *prior* to filing both the March 6 and May 14, 2009 SF-95s.  The United States Supreme Court has held that the "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."  *McNeil v. U.S.*, 508 U.S. 106, 113 (1993).  Likewise, the Tenth Circuit has stated that "as a general rule, a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit."  *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) (internal citations omitted).  While, Mr. Ajaj filed his complaint prior to exhausting his administrative remedies, he did not assert a claim under the FTCA in his original complaint. [Doc. #10].  Mr. Ajaj did not

specifically assert his tort claims under the FTCA until his Second Amended Complaint was filed on August 17, 2009. [Doc. #68].

The Tenth Circuit has stated that "[a]llowing claimants…to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless." *Duplan*, 188 F.3d at 1199. However, in the *Duplan* case, because the Duplans and the government agreed to an administrative closure of their first action pending exhaustion of their administrative remedies, the court found that the amended complaint constituted a new action for purposes of the FTCA. *Id.* at 1199-1200. Mr. Ajaj did not administratively close his case during the pendency of his administrative claims. In the present case, the question is whether Mr. Ajaj's Second Amended Complaint constitutes a new action because it is the first time Mr. Ajaj alleged tort claims under the FTCA, thus making his administrative exhaustion timely.

BOP and the U.S. argue that Mr. Ajaj brought claims challenging his medical care in his First Amended Complaint that should properly have been brought under the FTCA, but simply failed to label his claims as arising under the FTCA. Therefore, the Second Amended complaint does not constitute a new action, and Claim Ten should be dismissed for failure to exhaust the administrative remedies. In Mr. Ajaj's First Amended Complaint, he brought challenges to his medical care under the Eighth Amendment and the Alien Tort Claim Act, 28 U.S.C. §1350. [Doc. #10]. BOP and the U.S. contend that the facts underlying Mr. Ajaj's Eighth Amendment and Alien Tort Claims Act claim are the same as those later asserted under the FTCA in the Second Amended Complaint.

Mr. Ajaj's First Amended Complaint describes the following complaints in Claim 3, "Deliberate Indifference to Medical Needs:" refusal to provide treatment for insomnia [Doc. #10,

¶67], failure to provide him with a dermatologist for his severe skin rash and skin infection [*Id.* at ¶68], failure to provide treatment for foot, hand, and leg numbness [*Id.* at ¶69], failure to provide him with an optometrist [*Id.* at ¶74], failure to provide allergy medication [*Id.* at ¶77], and preventing Mr. Ajaj from obtaining various nutritional supplements [*Id.* at ¶79)].  Mr. Ajaj brought these claims under the Alien Tort Claim Act [*Id.* at ¶128] and the Eighth Amendment [*Id.* at ¶129].  In both his original complaint [Doc. #3] and his First Amended Complaint, Mr. Ajaj stated that he was bringing this civil action pursuant to "28 U.S.C. §§1331, 1332(a), 1350, 1357, 1361, 1343, 1367(a), 5 U.S.C. §701 *et seq.* ("APR"), 42 U.S.C. §§ 1981, 1985, 1486, The Religious Freedom Restoration Act 'RFRA' and the Religious Land Use and Institutionalized Persons Act 'RLUIPA,' the First, Fifth, and Eighth, Amendment to U.S. Constitution, and customary international human right law, which is incorporated into Federal common law."

In his Second Amended Complaint, Mr. Ajaj explicitly brought a claim against the United States under the FTCA in Claim Four [Doc. 68, ¶¶172-177].  Claim Four did not allege new facts, but incorporated the previously alleged factual basis.  The previously alleged facts include Mr. Ajaj's Eighth Amendment claim and a claim for "Deliberate Indifference to Medical Needs."  [Doc. 68, ¶¶ 117-171].  The factual bases for the FTCA claim includes: failure to provide medical treatment for insomnia [*Id.* at ¶146], failure to provide Mr. Ajaj with bathroom access and sufficient toilet paper needed for his IBS [*Id.* at ¶150], refusal to provide or permit Mr. Ajaj to purchase peppermint oil to lessen his IBS symptoms [*Id.* at ¶¶152-153], denial of Mr. Ajaj's request to be seen by a dermatologist [*Id.* at ¶155], refusal to provide Mr. Ajaj with follow-up neurological treatment and medication for fiber peripheral neuropathy [*Id.* ¶158], refusal to provide prescribed medication and order officers to refrain from placing Mr. Ajaj in tight handcuffs [*Id.* at ¶159],  refusal to provide soy milk or dairy alternative [*Id.* at ¶161], refusal

to provide treatment for chronic fatigue [*Id.* at ¶163], denial of various "medically prescribed" items [*Id.* at ¶164], general health care deficiencies for Mr. Ajaj and other inmates [*Id.* at ¶¶165-167], and refusal to place Mr. Ajaj under medicinal restrictions [*Id.* at ¶171].

The allegations and medical conditions described above now constitute the factual bases for Claim Ten, brought under the FTCA, in the Third Amended Complaint [Doc. #167].  With the possible exception of Mr. Ajaj's complaints associated with treatment of his IBS, all of the medical conditions that form the bases of Mr. Ajaj's FTCA claim in his Second Amended Complaint were present in the First Amended Complaint.

In their motion, BOP and the U.S. cite an opinion by Judge Krieger involving a previous case filed by Mr. Ajaj as conflicting authority on this issue.  However, the facts that were before Judge Krieger are different and distinguishable from the facts before this Court.  In *Ajaj v. United States*, Judge Krieger held that plaintiff's case began, for purposes of the FTCA, when he first brought his FTCA claim, not when the original case was filed.  2006 WL 1305198 *6 (D. Colo. 2006).  In that case the FTCA claim "did not relate back to the filing of the original Complaint."  The claim was timely "[b]ecause Mr. Ajaj's tort claim was denied by the agency before he asserted it in this action."  *Id.*  Mr. Ajaj, in the case before Judge Krieger, did not assert *any* tort claims until he filed his amended complaint, and the tort claims filed in the amended complaint did not "arise out of the conduct, transaction, or occurrence set forth in the original Complaint."  *Id.* at 5.  The court found that the claim "did not relate back to the filing of the original complaint."  *Id.*

In the instant case, however, Mr. Ajaj's tort claims against the United States clearly do relate back to the filing of the original complaint and the First Amended Complaint.  The factual bases for Mr. Ajaj's FTCA claim, as described above, is virtually identical to the factual bases

for his tort claims.  While in the case before Judge Krieger, Mr. Ajaj did not asserted an FTCA claim until after the agency issued its denial, in the case before this Court Mr. Ajaj asserted his tort claims prior to any agency denial.

The only additional facts that could be considered new in the Second Amended Complaint are those relating to the treatment of Mr. Ajaj's IBS.  Even if these are new allegations, Mr. Ajaj's initial SF-95 complaint regarding his IBS treatment was untimely.  The statute requires that a claimant file their tort claim in writing to the federal agency within two years after the claim accrues.  *See In re Franklin Savings Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004).  According to Mr. Ajaj's medical records, he has had IBS since at least December 2005.  [Doc. #388, Exhibit A, Attachment 7].  Mr. Ajaj did not submit a SF-95 for this issue until March 6, 2009.  In that SF-95 Mr. Ajaj indicated the "date and day of the accident" as "since approximately 2002." [*Id.* at Attachment 4].  Therefore, even if Mr. Ajaj's complaints regarding IBS treatment were not included in the First Amended complaint as one of his "chronic illnesses," the SF-95 filed was untimely.  Under the FTCA, a claim is "forever barred unless a plaintiff files an administrative claim within two years of the time that claim accrues."  28 U.S.C. §2401(b).

Therefore, because Mr. Ajaj did not meet the procedural statutory requirements for raising a claim under the FTCA, there is no waiver of sovereign immunity for Claim Ten, and this Court lacks jurisdiction to hear the claim.  *See In re Franklin Sav. Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004);  *Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1463 (10th Cir. 1989).  However, because filing a new suit, not amending the complaint is the correct course of action, Claim Ten is dismissed without prejudice.

Defendant BOP and U.S.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) is

GRANTED (#388).  Claim Ten in Plaintiff's Third Amended Complaint (#167) is DIMISSED

WITHOUT PREJUDICE.

### Tomas Gomez's Motion for Summary Judgment (#448)

Mr. Gomez requests that the Court grant summary judgment in his favor on Mr. Ajaj's

First Amendment retaliation claim asserted against him in his individual capacity.  Mr. Gomez

filed his motion on January 4, 2012.  Mr. Ajaj did not respond.[1]

The Court may grant summary judgment if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The

moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The Court will

examine the factual record and make reasonable inferences therefrom in the light most favorable

to the party opposing summary judgment.  *Concrete Works of Colorado, Inc. v. City and County

of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

In a previous order  Judge Krieger characterized the claim as an allegation that "Mr.

Gomez issued [Mr. Ajaj] a disciplinary report as retaliation for Mr. Ajaj engaging in protected

First Amendment activity – namely, a hunger strike." [Doc. #275 at 24].  The claim arises out of

an incident that arose on September 27, 2005 on Range 2 of the Delta Unit at ADX, where Mr.

---

[1] On March 14, 2012 Mr. Ajaj filed a Motion requesting that this Court deny the Motion for Summary
Judgment or, in the alternative, grant Mr. Ajaj 45 days to file a response.  [Doc. #483].  The Motion for
Summary Judgment was filed January 4, 2012.  Mr. Ajaj had until January 25, 2012 to file a response.
No response was filed and no request for an extension of time was filed.  On February 27, 2012 Mr. Ajaj
filed a motion requesting that briefing on the Motion for Summary Judgment be stayed pending decisions
on his motions to compel.  On March 1, 2012 Magistrate Judge Watanabe stayed all pending motions to
compel until the Motion to Dismiss and Motion for Summary Judgment were decided [#476].  Now, a
month and half after Mr. Ajaj's response was due he asks for additional time.  As is evident by the
numerous motions Mr. Ajaj has filed in the last two months, he could have readily responded or asked for
additional time within the statutory period, but did not.  Therefore, Plaintiff's Motion [#483] is DENIED.

Ajaj was housed at the time.  According to Mr. Gomez's incident report, on that date Mr. Ajaj stated that he was going to go on hunger strike to protest that he was not being allowed to progress through the Step Down Program.  [Doc. #448, Exhibit B, Attachment 1].  Mr. Gomez reported that Mr. Ajaj "further stated that he and the inmates in his situation were being treated different than other inmates at this institution.  He said this at a volume that could easily be heard by other inmates on the range.  It was clear that it was his intention that all inmates on the range hear his statements…As I departed the range he began speaking with several other inmates on the range in an aggressive tone." *Id.*  As a result of this incident, Mr. Gomez issued an incident report for "conduct which disrupts or interferes with the orderly running of the institution (Code 199), most likely encouraging others to riot (Code 106)." [Doc. #448, Exhibit B, ¶4].

In accordance with BOP policy, Lt. Whitehouse conducted an investigation into the incident and found that the incident report was "accurate as written and the charge [is] valid." *Id.* at Attachment 1, p. 7.  On November 3, 2005 the Disciplinary Hearing Office ("DHO") conducted a hearing on Mr. Gomez's incident report.  The DHO found that Mr. Ajaj engaged in the prohibited act of 'Engaging in a Group Demonstration, Code 212." *Id.* at §V.  The DHO reasoned that sanctions were reasonable because "encouraging or engaging in a group demonstration seriously threatens the security of an institution.  These acts have been shown to lead to physical confrontations between staff and inmates." *Id.* at §VII.  As a result, DHO imposed the following sanctions: (1) Disallowance of 27 days of good conduct time; (2) 30 days disciplinary segregation; (3) 30 days loss of property privileges.  *Id.* at §VI.

Mr. Ajaj brought a First Amendment retaliation claim for monetary damages under *Bivens* against Mr. Gomez in his Third Amended Complaint [Doc. #167].  Mr. Gomez argues that he is entitled to summary judgment on this claim for the following reasons: (1) The two-year

statute of limitations bars Mr. Ajaj's claims; (2) there is no recognized *Bivens* remedy for the alleged First Amendment violation; (3) Mr. Gomez is entitled to qualified immunity; and (4) The undisputed facts show that there is not genuine issue as to any material fact.

Statute of Limitations

Mr. Gomez argues that Mr. Ajaj's claim against him was filed out of time, and thus is barred by the statute of limitations.  A *Bivens* claim, such as is asserted here, is "subject to the general personal injury statute of limitations of the state where the claim arose." *Trujillo v. Simer*, 934 F. Supp 1217, 1226 (D. Colo. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)).  Mr. Ajaj's claim arose in Colorado.  Colorado's general statute of limitations for personal injury claims requires that a claimant bring their claim within two years after the action accrues. C.R.S. §13-80-102.

Mr. Ajaj's claim arose on the date that Mr. Gomez issued his incident report.  The undisputed facts show that the incident report was issued on September 27, 2005.  Accordingly, Mr. Ajaj had until September 27, 2007 to file a lawsuit asserting claims against Mr. Gomez.  Mr. Ajaj did not file the present lawsuit until September 9, 2008, almost a full year after the statute of limitations expired.  Therefore, Mr. Ajaj is barred from asserting his claim against Mr. Gomez.

Because this Court finds that the statute had run on Mr. Ajaj's *Bivens* claim asserted against Mr. Gomez, it need not address Mr. Gomez's other argument.  Mr. Gomez's Motion for Summary Judgment [#448] is GRANTED.

**Order**

Accordingly, for the aforementioned reasons, the Court orders that:

The Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED [#388]

The Motion for Summary Judgment is GRANTED [#448]

The Motion for Order is DENIED [#483]

All other pending motions [# 393, 405, 406, 407, 408, 409, 412, 413, 430, 439, 465, 466, 471, 473, 478, 479] are DENIED as MOOT.

DATED this 27th day of March, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge